# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

YONATHAN HERNANDEZ,
CUTBERTO CARRASCO-GONZALEZ

      Plaintiffs

v.

FRANCO AMERICAN BAKING
COMPANY,

      Defendant

Case No.: 3:20-cv-00628-LRH-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 38

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is defendant Franco American Baking Company's (Franco American) Motion for Sanctions against plaintiff Cutberto Carrasco-Gonzalez (Carrasco-Gonzalez)[1]. (ECF Nos. 38, 38-1 to 38-10.) Carrasco-Gonzalez filed a response. (ECF Nos. 40, 40-1 to 40-9.) Franco American filed a reply. (ECF Nos. 41, 41-1 to 41-10.)

Plaintiffs Carrasco-Gonzalez and Yonathan Hernandez (Hernandez) are Hispanic men who were employed by Franco American and allege that they were subject to harassment, discrimination and retaliation based on their ethnicity/race/national origin. (Second Amended Complaint, ECF No. 14.) In this motion, Franco American accuses Carrasco-Gonzalez of witness tampering by offering current Franco American employees money in exchange for favorable

---

[1] In the deposition transcripts submitted in connection with this motion as well as at the hearing, Carrasco-Gonzalez was also frequently referred to by his nickname, Victor.

testimony. Franco American seeks dismissal of Carrasco-Gonzalez' claims as a sanction, as well as an award of costs and attorney's fees incurred in defending this action.

The court reviewed the briefing and held an evidentiary hearing on August 31, 2021, and issues the instant Report and Recommendation. For the reasons discussed below, it is recommended that Franco American's motion be granted insofar as they request that Carrasco-Gonzalez' claims be dismissed.

## I. BACKGROUND

Franco American filed its original motion for sanctions asserting that *both* Plaintiffs had attempted to obtain declarations from current Franco American employees by offering them money during the week of April 5, 2021. (ECF No. 24.) The motion was briefed (*see* ECF Nos. 24, 27, 28), and the court held a hearing on June 22, 2021. (Minutes at ECF No. 32.) The first motion was based on unsigned declarations from four unidentified Franco American employees. The court denied the motion with prejudice as to Hernandez because the unsigned declarations did not attribute any wrongful conduct to Hernandez. The court denied the motion without prejudice as to Carrasco-Gonzalez because the court found it could not subject Carrasco-Gonzalez to sanctions based on the unsigned declarations, but gave him leave to re-file the motion. The court ordered Franco American's counsel to provide signed declarations to Plaintiffs' counsel, and allowed the parties to undertake discovery related to this issue by deposing the declarants after they were identified by Franco American. The court also allowed Carrasco-Gonzalez to be deposed, as well as other declarants identified by Plaintiffs. The court then set the matter for an evidentiary hearing on August 31, 2021. (ECF No. 32.)

The four declarants/witnesses were identified by Franco American and were deposed on July 7, 2021: Ubaldo Gomez Franco, Guadalupe Sanchez Alameda, Manuel Tabares and Manuel

Carias. Carrasco-Gonzalez was deposed, as well as witnesses identified by Carrasco-Gonzalez as being approached about serving as a witness, but who say nothing was offered in exchange for their testimony.

Franco American filed its renewed motion on August 6, 2021, moving for sanctions under Federal Rule of Civil Procedure 37(b) and the court's inherent authority, including dismissal of Carrasco-Gonzalez's claims and an award of attorney's fees and costs in defending this action. The court held an evidentiary hearing on August 31, 2021, and heard testimony from Ubaldo Gomez Franco, Guadalupe Sanchez Alameda, and Manuel Tabares, as well as a manager from Franco American, Art Silvia (also referred to as Art Silva or Arturo Silva), and Franco American president Tim Gant. The court also heard some argument from counsel.

## II. LEGAL STANDARD

Franco American seeks sanctions based on Rule 37(b) and the court's inherent authority. Rule 37(b) authorizes the court to impose sanctions for failing to obey a discovery order or in connection with a deposition.

In *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772 (7th Cir. 2016), the Seventh Circuit found that dismissal for witness tampering was appropriate under either Rule 37 or the court's inherent authority, pointing out that there was "no reason why the power [to impose sanctions under Rule 37] would not also extend to a party soliciting a witness to lie at his court-ordered deposition." *Ramirez,* 845 F.3d at 776 (citation omitted). Here, unlike *Ramirez*, there is no evidence that Carrasco-Gonzalez was soliciting a witness to lie *at a court-ordered deposition or in connection with a discovery order*, triggering Rule 37.[2] Instead, Carrasco-Gonzalez is asserted to have

---

[2] To be clear, there was testimony that Carrasco-Gonzalez did solicit the witnesses to lie; however, that solicitation was not in the context of a *deposition or other discovery-related context* so as to trigger available sanctions under Rule 37.

offered witnesses money in exchange for favorable testimony in the form of declarations before the early neutral evaluation (ENE) took place in this matter. Therefore, any sanction issued must be pursuant to the court's inherent power.

A federal district court has inherent authority to sanction conduct abusive of the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991). Before imposing sanctions under its inherent sanctioning authority, a court must make an explicit finding of bad faith or willful misconduct. *In re Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003); *see also Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001). Recklessness, when combined with an additional factor such as frivolousness, harassment, or an improper purpose, may support sanctions. *See In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010); *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001); *Fink*, 239 F.3d at 994. Mere negligence or recklessness alone will not suffice. *In re Lehtinen*, 564 F.3d 1052, 1058 (9th Cir. 2009). Thus, "sanctions are available if the court specifically finds bad faith or conduct tantamount to bad faith." *Fink*, 239 F.3d at 994.

Inherent power sanctions may be imposed against attorneys, clients and pro se litigants. *Aleyska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975). The court's "inherent power 'extends to a full range of litigation abuses.'" *Fink*, 239 F.3d at 992 (quoting *Chambers*, 501 U.S. at 46-47).

The Ninth Circuit does not appear to have specifically addressed the imposition of sanctions under the court's inherent power for witness tampering, but it has indicated that such conduct could warrant serious sanctions. *See Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 602 (9th Cir. 1991) (affirming a district court decision not to impose sanctions in a civil case for witness tampering when district court made factual finding that

1  conduct at issue was not meant to intimidate the witness); *Erickson v. Newmar Corp.*, 87 F.3d

2  298, 304 (9th Cir. 1996) (ordering new trial based on defense counsel's witness tampering).

3          As indicated above, the Seventh Circuit has concluded that witness tampering may

4  warrant the sanction of dismissal. *Ramirez*, 845 F.3d at 776 (quoting *Secrease v. Western &*

5  *Southern Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015)).

6          Nor is it clear in the Ninth Circuit what the burden of proof is for imposing sanctions

7  under the court's inherent power under these circumstances. The Seventh Circuit held that a

8  preponderance of the evidence standard applies when a party seeks dismissal of a lawsuit as a

9  sanction for misconduct occurring in civil litigation. *Ramirez*, 845 F.3d at 781. Some district

10  courts within the Ninth Circuit have also adopted the preponderance of the evidence standard.

11  *See Adams v. Roberts,* CV 18-148-M-DLC, 2021 WL 1530092, at *2 (D. Mont. Apr. 19, 2021)

12  (adopting this standard); *Torres v. Wells Fargo Bank,* 2019 WL 8012686 (C.D. Cal. Dec. 17,

13  2019) (adopting this standard). The court agrees with the reasoning in *Ramirez*, and concludes

14  that the preponderance of the evidence standard should apply when, as here, a party seeks

15  dismissal of a lawsuit as a sanction for alleged witness tampering.

16          A preponderance of the evidence means that the evidence must demonstrate that it is

17  more probably true than not true that the person engaged in witness tampering. *See Concrete*

18  *Pipe and Products of Cal., Inc. v. Construction Laborers Pension Trust,* 508 U.S. 602, 622

19  (1993) (citation omitted) ("The burden of showing something by a 'preponderance of the

20  evidence,' the most common standard in civil law, 'simply requires the trier of fact to believe

21  that the existence of a fact is more probable than its nonexistence before [he] may find in favor

22  of the party who has the burden to persuade the [judge] of the fact's existence."); Ninth Circuit

23  Model Civil Jury Instruction 1.6 (2017).

1    The parties do not dispute that it is improper for a party to pay a fact witness for

2    testimony, but dispute whether such conduct occurred in this case. The court agrees that offering

3    to pay a witness for his testimony (even if the testimony is true) constitutes bad faith or is

4    tantamount to bad faith and is sanctionable conduct. In the context of a lawyer offering to pay a

5    fact witness in return for testimony, one court explained that the purpose behind prohibiting such

6    conduct is that "it violates the integrity of the justice system and undermines the proper

7    administration of justice. Quite simply, a witness has the solemn and fundamental duty to tell the

8    truth. He or she should not be paid a fee for doing so." *Golden Door Jewelry Creations, Inc. v.*

9    *Lloyds Underwriters Non-Marine Assn.,* 865 F.Supp. 1516, 1526 (S.D. Fla. 1994), *rev'd in part*

10   *on other grounds,* 117 F.3d 1328, 1335 n. 2 (11th Cir. 1997); *accord Dyll v. Adams*, No. 3:94-cv-

11   2734-D, 1997 WL 222918, at *2 (N.D. Tex. Apr. 29, 1997) ("Payment for factual testimony is

12   generally prohibited even if the testimony sought is truthful."); *Caldwell v. Cablevision Sys.*

13   *Corp.,* 925 N.Y.S.2d 103, 106 (N.Y.App. Div. 2011) ("giving testimony as to facts within one's

14   knowledge is a matter of public duty" and an "inherent burden of citizenship which requires no

15   compensation" and to compensate otherwise would be "subversive of the orderly and efficient

16   administration of justice, even where a witness is contracted to tell the truth, rather than to testify

17   falsely, and payment creates an incentive, even unconscious, toward biased testimony.); *State of*

18   *N.Y. v. Solvent Chem. Co., Inc.*, 166 F.R.D. 284, 289 (W.D.N.Y. 1996) ("The payment of a sum

19   of money to a witness to 'tell the truth' is as clearly subversive of the proper administration of

20   justice as to pay him to testify as to what is not true.").

21       "[O]utright dismissal of a lawsuit … is a particularly severe sanction, yet is within the

22   court's discretion." *Chambers*, 501 U.S. at 45 (citation omitted). When a party seeks dismissal as

23   a sanction, the court must weigh five factors before imposing such a sanction: (1) the public's

6

interest in expeditious resolution of litigation, (2) the court's need to manage its dockets, (3) the risk of prejudice to the party seeking sanctions, (4) the public policy favoring the disposition of cases on their merits, and (5) the availability of less drastic sanctions. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995).

### III. DISCUSSION

The court must now decide whether a preponderance of the evidence demonstrates that Carrasco-Gonzalez offered witnesses money in exchange for their testimony.

Three witnesses—Ubaldo Gomez Franco, Guadalupe Sanchez Alameda, and Manuel Tabares—signed declarations/affidavits, testified in their depositions, and testified at the evidentiary hearing that Carrasco-Gonzalez offered them money ($100 to $300, and even up to $1,000 for Ubaldo Gomez Franco) in exchange for their testimony against Franco American. (Ubaldo Gomez Franco declaration, ECF No. 40-2 at 9; Ubaldo Gomez Franco Depo., ECF No. 40-2 at 1-8; Guadalupe Sanchez Alameda declaration at ECF No. 40-4 at 8; Guadalupe Sanchez Alameda Depo., ECF No. 40-4 at 1-7; Manuel Tabares Aff., ECF No. 40-3 at 8; Manuel Tabares Depo., ECF No. 40-1 at 1-7.)

Guadalupe Sanchez Alameda testified that he advised a Franco American manager named Art Silvia (also referred to as Art Silva or Arturo Silva) about Carrasco-Gonzalez' conduct. There was testimony at the hearing that Ubaldo Gomez Franco was nearby when Guadalupe Sanchez Alameda was discussing this matter, and then Ubaldo Gomez Franco confirmed that Carrasco-Gonzalez had also offered him money for his testimony. Manuel Tabares testified that he spoke to two of the owners of Franco American, Tim Gant and Jack Gant, about Carrasco-Gonzalez' conduct. There was also testimony that another employee,

1 Manuel Carias, told Jack Gant that Carrasco-Gonzalez had offered him money to testify against

2 Franco American.

3    Art Silvia took this information to Tim Gant, who is the president and one the of owners

4 of Franco American. (Silvia Decl., ECF No. 41-1; Tim Gant Decl., ECF Nos. 38-1, 41-4.)

5    Silvia and Tim Gant state in their declarations and testified at the hearing that they then

6 met with the employees, and they confirmed what Carrasco-Gonzalez had done. They asked each

7 of them whether they were willing to put this in writing. (ECF Nos. 41-1, 38-1 and 41-4.)

8    Tim Gant testified that he used a translation app to prepare a declaration/affidavit in

9 Spanish and in English. He had Silvia, who is fluent in Spanish, and Ubaldo Gomez Franco

10 review the document. Silvia and Tim Gant then met separately with each of the four employees

11 and reviewed the written statement with them, asked them whether the statement was truthful

12 and accurate and whether they understood it, and advised them that signing it was voluntary. The

13 statement was then reduced to the English translation. Tim Gant then made an appointment for

14 that afternoon with a mobile notary, and each of the four employees signed the statement in front

15 of Tim Gant and the notary. (ECF Nos. 41-1, 38-1, 41-4.)

16    Ubaldo Gomez Franco, Guadalupe Sanchez Alameda, and Manuel Tabares each testified

17 that the declaration/affidavit was presented to them in Spanish and in English, that they had a

18 chance to review it and understood it, that it was accurate, and they each signed it voluntarily.

19    The unsigned Spanish declarations/affidavits with the English translation for Ubaldo

20 Gomez, Manuel Tabares, and Guadalupe Sanchez are set forth at ECF No. 41-6 at 2-4. Tim Gant

21 testified that he had created the form for Manuel Carias from a template, but apparently did not

22 save it.

23

Carias signed an affidavit stating that Carrasco-Gonzalez offered him money in exchange for his testimony against Franco American (ECF No. 40-1 at 7); however, when Carias was deposed, he testified that he did not in fact understand the statement that was presented to him. He further testified, contrary to his affidavit, that Carrasco-Gonzalez did not offer to pay him money for his testimony. He did testify, however, that he had heard from Manuel (presumably Manuel Tabares), that Carrasco-Gonzalez had offered to pay other employees money for their testimony. (ECF No. 40-1 at 5, depo. p. 10:21-23, p. 11:11-25, 12:1-7.) Carias did not testify at the evidentiary hearing.

 In his declaration and at his deposition, Carrasco-Gonzalez denied that he had ever offered anyone money in exchange for their testimony. (Carrasco-Gonzalez Decl., ECF40-9 at 15-16; Carrasco-Gonzalez Depo., ECF No. 40-9 at 1-14.) He testified that maybe five years ago, before he even initiated his case, he spoke to Ubaldo about helping his case, and Ubaldo said he would "go with" whoever gave him more money (*i.e.,* Carrasco-Gonzalez or Franco American). Somewhat surprisingly, Carrasco-Gonzalez did not appear for or testify at the evidentiary hearing.

Carrasco-Gonzalez submits the declaration of former Franco American employee Richard Gomez, who worked at Franco American in 2018 for approximately three weeks, and states that he observed a member of Franco American's management using derogatory terms about Hispanic employees. The declaration specifically states that Carrasco-Gonzalez' counsel, Mr. Mausert, explained to him he would not receive anything in exchange for his testimony. The declaration is dated July 6, 2021, which is after the first motion for sanctions had been filed. (ECF No. 38-10.)  Gomez also testified at his deposition that when Carrasco-Gonzalez contacted

him, he did not offer anything in exchange for his declaration. (ECF No. 40-7 at 5, depo. p. 12:1-7.)

Carrasco-Gonzalez also presents the deposition transcripts of two individuals who testified that they were contacted by the other plaintiff, *Hernandez*, about providing a statement, and they both testified that *Hernandez* did not offer them anything in exchange for their testimony. (Depo. of Mario Anibal Sanchez Duran, ECF No. 40-5 at 4-5, depo. p. 8:16-25, 9:1-2, 10:20-22, 12:19-25, 13:1; Depo of Ramon Valencia-Soto, ECF No. 40-6 at 4-5, depo. p. 9:1-24, 12:20-25, 13:1-14.)

The other plaintiff, Hernandez, testified that after he met with his counsel, Mr. Mausert, he contacted various witnesses, including Mario Sanchez, Luis Ruelas, Juan Ruelas, and Ramon Valencia. (ECF No. 38-3 at 6, depo. p. 12:4-12.) Hernandez testified that Carrasco-Gonzalez was not part of the conversation with these individuals. (ECF No. 38-3 at 9, depo. p. 22:8-13.)

In sum, three witnesses unequivocally stated in declarations/affidavits, deposition testimony and at the evidentiary hearing that Carrasco-Gonzalez offered them money in exchange for testimony against Franco-American. They confirmed to Art Silvia and Tim Gant that this conduct took place. Art Silvia and Tim Gant attested to this in their declarations as well as at the evidentiary hearing. Carrasco-Gonzalez disputes that he offered them any money in his declaration and in his deposition testimony, but he did not testify at the evidentiary hearing. The witnesses' testimony substantially conformed to their declarations/affidavits and deposition testimony.

While one employee, Manuel Carias, ultimately recanted his statement that Carrasco-Gonzalez offered him money, this does not take away from the testimony from the other three employees that Carrasco-Gonzalez did so.

The evidence presented by Carrasco-Gonzalez includes several declarations from witnesses who were not offered anything in exchange for their testimony, but two of those witnesses were only contacted by Hernandez, so that does not speak to whether Carrasco-Gonzalez offered money in exchange for testimony. The third witness, Richard Gomez, claims that Carrasco-Gonzalez contacted him about being a witness and did not offer anything in exchange for his testimony, but Carrasco-Gonzalez contacted Richard Gomez *after* the motion had been filed accusing him of bribing witnesses had been filed.

Carrasco-Gonzalez raised issues about how and when the three employees were presented with the declarations/affidavits, but the bottom line is that all three employees unequivocally testified that they were provided the document in Spanish and English, they were given a chance to review it, they understood it, it was accurate, and they signed it.

Under these circumstances, the court finds that it is more likely true than not true that Carrasco-Gonzalez offered Ubaldo Gomez Franco, Guadalupe Sanchez Alameda and Manuel Tabares money in exchange for their testimony against Franco American. The court must now consider what sanction to impose.

In *Ramirez*, the Seventh Circuit found that where a preponderance of the evidence supported a conclusion of witness tampering, the district court did not abuse its discretion in dismissing the case with prejudice instead of imposing a lesser sanction. *Ramirez*, 845 F.3d at 782. The Seventh Circuit commented that "witness tampering is among the most grave abuses of the judicial process, and as such it warrants a substantial sanction." *Id*. (citing *Secrease*, 800 F.3d at 402, *Ty*, 517 F.3d at 498). "Dismissing the case with prejudice is an entirely reasonable response to such a deliberate attempt to deceive the court." *Id*.

11

It is unclear that Carrasco-Gonzalez could pay a monetary sanction as the amount of fees and costs incurred in defending this matter even up to this point are likely substantial. The court cannot discern an issue-related or evidentiary sanction that would appropriately address the conduct that took place here. Civil contempt can be used to compel compliance with a court order, but that would not serve to remedy conduct that has already taken place. As such, the court finds that sanctions lesser than dismissal would be inadequate to address the conduct at issue, and dismissal of Carrasco-Gonzalez' claims will serve to appropriately punish and deter this serious misconduct.

In light of this conclusion, the court must now consider the factors outlined in *Anheuser-Busch*, 69 F.3d at 348. First, the public has an interest in expeditious resolution of litigation. Carrasco-Gonzalez' conduct has already impeded the court's ability to expeditiously resolve this matter. Therefore, this factor weighs in favor of dismissal. Second, the court's need to manage its docket is hindered when a party engages in conduct such as witness tampering because the court is taken away from other matters requiring its attention when it must address such conduct. As such, this factor weighs in favor of dismissal. Third, there is a risk of prejudice to Franco American in the absence of dismissal because there does not appear to be another sanction that appropriately addresses conduct that goes against the court's mission to administer justice. Therefore, this factor weighs in favor of dismissal. Fourth, while there is a public policy favoring disposition of cases on their merits, that does not outweigh the other factors, particularly where such egregious conduct is involved. Finally, the court has already discussed that less drastic sanctions will not appropriately address Carrasco-Gonzalez' conduct.

Ultimately, the court finds that dismissal of Carrasco-Gonzalez' claims with prejudice is an appropriate sanction for offering witnesses money in exchange for their testimony. To the

extent Franco American also requests an award of fees and costs, that request should be denied as the dismissal of Carrasco-Gonzalez' claims is a sufficient sanction.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Franco American's motion for sanctions and **DISMISSING** Carrasco-Gonzalez' claims **WITH PREJUDICE**. To the extent Franco American also requests fees and costs as a sanction, that request should be denied.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: September 3, 2021

William G. Cobb
United States Magistrate Judge

13